UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/6/2021___
```

----------------------------------------------------------X

ENZO PRIETO                                    :
                                               :          20-CV-3941 (RWL)
                          Plaintiff,           :
                                               :
            - against -                        :          **DECISION AND ORDER:**
                                               :          **SOCIAL SECURITY APPEAL**
                                               :
COMMISSIONER OF SOCIAL SECURITY,               :
                                               :
                          Defendant.           :

----------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Enzo Prieto, represented by counsel, commenced the instant action against Defendant Andrew Saul, Acting Commissioner of the Social Security Administration (the "Commissioner") pursuant to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's decision that Prieto is not entitled to disability insurance benefits under 42 U.S.C. § 423 et seq. Prieto has filed a motion for summary judgement on his claims pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. (Dkt. 22.) The Commissioner opposes the motion and seeks judgement on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 24.) For the reasons stated below, this Court concludes that Prieto's motion should be GRANTED, the Commissioner's motion should be DENIED, and the case should be REMANDED.

1

## Background

### A.    Prieto's Personal And Employment History

Enzo Prieto was born on February 14, 1973.  Prieto has a twelfth-grade education and worked as a handyman for fifteen years.  (R.102, 115.[1])  As a handyman, Prieto was responsible for performing repair and maintenance tasks.  (R. 240.)  Prieto was able to walk and stand for eight hours each day, sit for one hour each day, and frequently lift and carry fifty pounds or more.  (R. 240.)  Prieto began suffering back pain in November 2015 after attempting to lift a piano into a sanitation truck.  (R. 340.)  He was forty-two years old at the onset of his injury.  (R. 87, 239.)  After that incident, Prieto took three days off work and thereafter "continued [to work] with low-grade symptomatology" on "light duty." (R. 428.)  Several months later, in March 2016, Prieto reinjured his back moving a five-pound bucket of compound.  (R. 428.)  Prieto has not worked since.  (R. 686.)

### B.    Procedural History

On May 11, 2017, Prieto filed an initial claim for disability insurance benefits ("DIB"), alleging disability beginning on November 12, 2015, as a result of the spinal injury he incurred while working as a handyman.  (R. 210).  On July 12, 2017, the Social Security Administration (the "Administration") denied his claim, concluding that Prieto's condition was "not severe enough to keep [him] from working."  (R. 125.)  On August 16, 2017, Prieto requested a hearing before an Administrative Law Judge ("ALJ") to review his claim, which took place on December 12, 2018 (the "Hearing").  (R. 133-34, 78-106.) Prieto, represented by counsel, appeared for a video hearing before ALJ George Gaffney. (R. 78-106.)  The ALJ took testimony from Prieto and a vocational expert.

---

[1] "R." refers to the Administrative Record (Dkt. 14).

On January 25, 2019, the ALJ issued a decision finding Prieto not disabled and denying Prieto's claim.  (R. 39-47.)  Prieto timely appealed the ALJ's decision to the Appeals Council, but on April 24, 2020, his request was denied, rendering the ALJ's decision the final determination of the Commissioner.  (R. 1-4.)  On May 21, 2020, Prieto filed the operative complaint, seeking district court review pursuant to 42 U.S.C. § 405(g). (Dkt. 1.)  On July 10, 2020, the parties consented to my jurisdiction for all purposes.  (Dkt. 11.)

**C.    The Medical Treatment Record**

Both Prieto and the Commissioner have provided summaries of the medical evidence and other facts contained in the Record.  Each party emphasizes the facts most favorable to their position; however, the summaries are consistent in material respects. The Court accordingly adopts Prieto's and the Commissioner's summaries of the medical evidence and other objective facts as accurate and complete for purposes of the issues raised in the cross-motions.  Rather than reprise all the medical evidence presented by the parties, the Court discusses the medical evidence relevant to Prieto's disorders of the spine and to the adjudication of the motions in the context of the legal analysis below.

The Court notes here, however, that Prieto received treatment from two physicians from whom no medical source opinions appear in the record.  Given the importance of that omission, the Court summarizes those two treatment relationships.

From 2015 to 2018, Prieto sought treatment for his chronic back pain from Dr. Yong Kim, an orthopedic surgeon, at least nineteen times.  (R. 315-38, 357-58, 394-413, 440-441, 446-552.)  On June 6, 2016, Dr. Kim performed a lumbar transforaminal epidural steroid injection on Prieto.  (R. 333-34.)  The injection, however, did not provide Prieto with sufficient pain relief, which led Dr. Kim to perform a lumbar laminectomy for lumbar

spinal stenosis on September 13, 2016.  (R. 304.)  Despite the lumbar laminectomy, Prieto continued to experience considerable pain.  Once again, attempting to treat Prieto's pain, Dr. Kim performed lumbar spine fusion surgery on January 23, 2018.  (R. 511-27.) Even after the surgery, however, Prieto's pain persisted.  (R. 534.)  Upon examination on May 11, 2018, Dr. Kim determined that Prieto was temporarily, totally disabled; and after another examination on August 3, 2018, Dr. Kim determined that Prieto was temporarily disabled.  (R. 544, 550.)

From 2015 to 2018 Prieto also consistently sought treatment for his back from Dr. Marc L. Orgel, his primary care provider.   On initial examination in 2015, Dr. Orgel diagnosed Prieto with "lumbago, primary."  (R. 570.)  In August 2016, Dr. Orgel noted in Prieto's pre-operative medical assessment that he "ha[d] persistent lower back pain, radiating to the right lower extremity," "ha[d] been diagnosed with a herniated intervertebral disc," and his "low back pain ha[d] not improved with [physical therapy]." (R. 700.)  Months later in December 2017, Dr. Orgel noted that Prieto was "ambulatory with assistance of a cane."  (R. 729.)  As with Dr. Kim, Prieto and Dr. Orgel have a bona fide doctor-patient relationship; the ALJ obtained several hundred pages of Prieto's medical records from Dr. Orgel when purporting to develop the record.  (R. 567-781.)

D.    **Opinion Evidence**

1.    **Workers' Compensation Evaluations**

In connection with a claim for workers' compensation, Prieto was examined and given disability evaluations by three healthcare providers.  First, Dr. Regina Hillsman, an orthopedic surgeon, performed an independent medical examination on Prieto on May 12, 2015.  (R. 353-55.)  Dr. Hillsman found that despite Prieto's limited spinal mobility, Prieto was still able to ambulate without an assistive device and did not have muscle

atrophy.   (R. 354.).   Prieto was diagnosed with a "lumbar sprain/strain, resolving." (R. 355.)  Dr. Hillsman opined that Prieto may work but cannot carry or lift objects over fifteen pounds.  (R. 355.)

Second, Dr. Carl Wilson, an orthopedic surgeon, performed an independent orthopedic medical evaluation on Prieto on January 4, 2017.  (R. 428.)   During the examination, Prieto shared that he still had "pain in [his] back and right leg, pain when walking, sitting, [and] sleeping."  (R. 428.)  Dr. Wilson noted that Prieto exhibited "difficulty in maneuvering, twisting, and bending; slow walking, [used] no orthotics or ambulatory aids" and demonstrated positive straight leg raise, indicating pain.  (R. 429.)  Dr. Wilson noted that Prieto's "[t]reatment ha[d] been reasonable and necessary" and that he "ha[d] a marked temporary restriction of work activity precluding any lifting, twisting, or bending. He [was] unable to extensively stand or walk or climb stairs."  (R. 429.)  Accordingly, Dr. Wilson opined that Prieto had marked disability.  (R. 430.)

Third, Dr. Pierce Ferriter, an orthopedic surgeon, performed two independent medical examinations on Prieto.  The first exam occurred on November 8, 2017.  (R. 454-58.)  Dr. Ferriter observed that Prieto had limited spinal mobility; more specifically, his flexion was at 50/90 degrees, his extension was at 10/30 degrees, right and left lateral bending at 15/30 degrees, and right and left rotation at 50/80 degrees.  Dr. Ferriter also observed a positive straight leg raise in the sitting and supine positions.  (R. 457.)  Despite Prieto's limitations, Dr. Ferriter observed full motor strength and no muscle atrophy in the lower extremities.  (R. 457.)  Based on his examination and the review of Prieto's medical records, Dr. Ferriter opined that Prieto had a 75% degree of causally related disability

and was able to return to light work "with restrictions of no repetitive bending and no heavy lifting greater than 10 pounds."  (R. 457.)

Dr. Ferriter's second examination took place on June 28, 2018, after Prieto's lumbar fusion surgery.  (R. 459-62.)  During the examination, Prieto complained of back pain and reported "difficulty with walking, bending, sleeping and lifting."  (R. 460.)  Prieto had taken Tramadol and was using a cane.  (R. 460.)  Dr. Ferriter observed that Prieto's flexion was at 70/90 degrees, his extension was at 20/30 degrees, right and left lateral bending at 20/30 degrees, and right and left rotation at 60/80 degrees.  (R. 461.)  Dr. Ferriter also observed a negative straight leg raise in the sitting and supine positions.  (R. 461.)  Prieto's motor and muscle strength remained unchanged from the time Dr. Ferriter had previously examined him.  (R. 461.)  Based on his examination, Dr. Ferriter opined that Prieto demonstrated "evidence of a moderate (50%) disability," and could "return to light duty work with restrictions of no repetitive bending and no lifting greater than 10 pounds."  (R. 461-62.)

### 2.    Consultative Examining Doctor

Dr. Carol McLean Long conducted a one-time consultative examination of Prieto on July 3, 2017.  (R. 388-93.)  During the examination Prieto rated "the pain in [his] back [at] about an 8/10."  (R. 388.)  Prieto also complained of leg pain, and Dr. Long observed that Prieto's spine had a limited range of motion.  She also noted that Prieto was able to ambulate slowly without an assistive device, had a negative straight leg raise test, and no evidence of muscle atrophy.  Under "activities of daily living" Dr. Long wrote that "claimant can do cooking, cleaning, laundry, shopping, and childcare.  He can shower and dress himself daily, but sometimes he needs help with the lower half.  He watches TV, listens

to the radio, and goes out for walks for exercise."  (R. 389.)  Dr. Long also stated that Prieto "can walk about two to three blocks," but it "takes him 15 minutes."  (R. 388.)  Dr. Long opined that at the time of examination Prieto had mild to moderate limitation in his ability to squat and walk on heels and toes, and concluded the exam with a "fair" prognosis.  (R. 391.)

E.    **Prieto's Testimony Before The ALJ**

At the Hearing, Prieto testified that he uses his cane at all times, including in his home because it is "very difficult to walk without it."  (R. 83.)  The ALJ, however, noted that after the lumbar fusion surgery Prieto's medical records did not reflect "any use of a cane."[2]  (R. 93.)  Prieto also testified that he had been taking Tramadol, cyclobenzaprine, diclofenac, and Aleve from January 2017 to the time the hearing took place.  (R. 82.) Prieto noted that the medication makes him very drowsy, and he "can't function the next day off the medication."  (R. 90.)  In addition to his medication, Prieto lies down and uses a heating pad to help alleviate his pain.  (R. 98.)  At the hearing, Prieto's pain was so intense from sitting that he had to stand in order to obtain temporary relief.  (R. 84.)  He testified that his daily functions are limited – he is able to bathe and dress himself, but he requires help putting on his socks and shoes.  (R. 88.)  His wife takes care of the cooking, cleaning, laundry, and shopping.  (R. 88-89.)  Prior to his injury, he handled the shopping. (R. 89.)

Prieto stated that on a typical day he "do[es not] do much" because he is "in pain" and his medications "drowse [him] out."  (R. 90-91.)  He tried to go off the pain medications for a time after his surgery because of the side effects, but the "pain was too intense," so

---

[2] The ALJ's statement was incorrect.  Dr. Ferriter noted Prieto's use of a cane at his June 28, 2018 examination, after the lumbar fusion surgery.  (R. 460.)

he "had to go back on the medication."  (R. 95.)  Other than doctors' appointments, he

does not leave his house and he does not have hobbies.  (R. 91.)  He is only able to "walk

a block and a half, maybe two."  (R. 93.)  He cannot lift or carry objects, stoop, kneel, or

crouch.  (R. 93.)  He noted that he still sees Dr. Kim regularly, as he continues to have

pain in his lower back and leg.  (R. 89.)  Prieto noted that Dr. Kim recommended physical

therapy, but it exacerbated his pain.  (R. 90.)  He had also been referred to a new doctor,

Dr. Kahn, for pain management, and to a neurologist.  (R. 89-90.)

## F.    Vocational Expert's Testimony

At the Hearing, Jacquelyn Schubacker, a vocational expert, noted that Prieto was

previously employed as a handyman, which is characterized as a skilled, SVP 7 job that

is medium work as defined in 20 C.F.R. § 404.1567(c),  although Prieto performed it as

heavy work as defined in 20 C.F.R. § 404.1567(d).[3]  (R. 100.)  The ALJ provided the

vocational expert with two hypothetical scenarios that entailed a 45 year old individual.

(R. 102.)  The first hypothetical limited lifting to 20 pounds occasionally and 10 pounds

frequently, standing and sitting, with a sit/stand option, to 6 hours out of an 8-hour

workday; and also occasionally calling for one to "[use] stairs, stoop, balance, kneel,

crouch, and crawl."  (R. 102.)  The hypothetical would also never require one to use

ladders, but there would be "occasional exposure to extremes of cold and to wetness."

(R. 103.)  The vocational expert posited that an individual with the same age, education,

---

[3] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c). "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work."  20 C.F.R. § 404.1567(d).

and work experience as Prieto could perform several jobs with this hypothetical profile, including inspector, hand packager, electrical accessories assembler, and plastic hospital products assembler.  (R. 103.)

Next, the ALJ provided a second hypothetical that "limit[ed] lifting to ten pounds occasionally; five frequently; stand[ing to] two hours in an eight-hour workday; [and] sit[ting] for six," with the remaining facts the same as the first hypothetical.  (R. 104.)  The vocational expert posited that an individual with the same age, education, and work experience as Prieto could perform a job with that hypothetical profile, including final assembler, inspection positions such as a touchup screener, and an order clerk.  (R. 104.) When the ALJ inquired as to whether adding a cane to ambulate would alter the ability of the hypothetical profile to perform the jobs, the vocational expert responded that it would not alter her analysis.  (R. 104.)  Lastly, the vocational expert noted that if missing two days a month were added to the second hypothetical, Prieto would still be able to perform the previously listed jobs.  (R. 104.)  At the conclusion of the Hearing, the ALJ agreed that Prieto could not perform the work he previously did as a handyman, but he needed to decide whether Prieto was able to perform unskilled, light work.

## G.   The ALJ's Decision

Using the five-step sequential evaluation process that the Social Security Administration prescribes to determine whether an individual is disabled, the ALJ decided that Prieto was not disabled under sections 216(i) and 223(d) of the Social Security Act and thereby was not entitled to disability insurance benefits.  (R. 47.)  Steps one and two are not at issue in the instant case, as the ALJ determined that Prieto has not engaged in substantial gainful activity since the day of his accident, and that Prieto has the following severe medically determinable impairments: asthma, tobacco dependence, and

degenerative disc disease status-post lumbar spine surgery.  (R. 41.)  The degenerative

disc disease status-post lumbar spine surgery is particularly relevant.

At step three, the ALJ determined that Prieto's spine disorder was not of a severity

to meet or medically equal the criteria of Listing 1.04, *Disorders of the Spine*, listed in 20

C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § § 404.1520(d), 404.1525 and

404.1526).  (R. 42.) In making this determination, the ALJ simply recited a portion of the

definition of Listing 1.04 and made the following conclusory statement:

> The claimant's degenerative disc disease does not meet or
> equal Listing 1.04, *Disorders of the Spine*.  The claimant does
> not have a disorder of the spine resulting in compromise of a
> nerve root or the spinal cord with: evidence of nerve root
> compression characterized by neuro-anatomic distribution of
> pain, limitation of motion of the spine, motor loss
> accompanied by sensory or reflex loss, spinal arachnoiditis,
> or lumbar spinal stenosis resulting in pseudoclaudication
> manifested by chronic nonradicular pain and weakness.

(R. 42.)   At no point did the ALJ reference the record to provide support for his

determination.

Lastly, the ALJ found that Prieto had the residual functional capacity to perform

light work as defined in 20 C.F.R. § 404.1567(b), except he could occasionally lift 20

pounds, frequently lift 10 pounds, stand, sit, and walk for six hours out of an eight-hour

day, and required a sit/stand option.  (R. 42.)  He could never climb ladders, occasionally

climb stairs, stoop, balance, kneel, crouch, and crawl, and could tolerate occasional

exposure to cold extremes, wetness, and hazards.  (R. 42.)  The ALJ also determined

that although Prieto had "an underlying medically determinable physical [ ] impairment …

that could be reasonably expected to produce claimant's pain or other symptoms,"

Prieto's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (R. 43.)

The ALJ concluded that Prieto's combination of impairments did not rise to a disabling level because the medical treatment notes indicate that he retained more functional capacity than alleged.  (R. 43.)  For support, the ALJ referenced the opinions of Drs. Hillsman, Wilson, Ferriter, and Long.  With the exception of Dr. Long's opinion, every opinion that the ALJ relied on was procured for Prieto's workers' compensation claim.  When considering the medical opinions of Drs. Wilson and Ferriter in his decision, the ALJ noted that, per 20 C.F.R. §§ 404.1504 and 416.904,

> a decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. …  Therefore, a determination made by another agency … that you are not disabled or blind is not binding on us.

(R. 44.)  The ALJ used that rule as justification to assign "little weight" to the medical opinions of Drs. Wilson and Ferriter.  Conversely, the ALJ arbitrarily did not assign "little weight" to Dr. Hillsman's opinion, despite the fact that Dr. Hillsman's opinion was also procured for Prieto's workers' compensation claim.  Instead, the ALJ assigned "less than great weight" to Dr. Hillsman's opinion.  Dr. Hillsman opined "that [Prieto] could not lift or carry more than 15 pounds" and "the medical evidence discussed demonstrates that [Prieto] retains the ability to occasionally lift 20 pounds and frequently lift 10 pounds."  (R. 44-45.)  The ALJ did not cite to the record to support his hypothesis of Prieto's lifting capabilities.  In reaching his conclusion regarding Prieto's residual functional capacity, the ALJ relied upon the opinions of Dr. Long – which he assigned great weight – and Dr. Hillsman – which he assigned "less than great weight" – and failed to even mention Drs.

Kim or Orgel anywhere in his decision, even though they were Prieto's treating physicians.

In accordance with the vocational expert's testimony, the ALJ noted that Prieto was unable to perform any past relevant work as a handyman because it required greater exertional capacity than Prieto had based on his residual functional capacity assessment. (R. 45.)  The ALJ nonetheless found that considering Prieto's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Prieto could perform.  (R. 46.)  The ALJ referenced the jobs that the vocational expert testified Prieto would be able to perform, such as inspector, electrical assembler, and hospital product assembler.  (R. 46.)  The ALJ thus concluded that Prieto had not been under disability, as defined in the Social Security Act, from November 12, 2015, through the date of the decision.  (R. 46.)

## Applicable Law

### A.    Standard of Review

The court's review of an appeal of a denial of disability benefits requires two levels of inquiry.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).  First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision.  42 U.S.C. § 405(g); *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999).  Second, the court must decide whether the Commissioner's decision is supported by substantial evidence in the record.  *Id*.  So long as they are supported by substantial evidence in the administrative record, the findings of the ALJ after a hearing as to any facts are conclusive.  42 U.S.C. § 405(g).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure might have affected the disposition of the case.  *Kohler v. Astrue*, 546 F.3d

260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an applicable statutory provision, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id*. (regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (SSR).  In such a case, the court may remand the matter to the Commissioner especially if deemed necessary to allow the ALJ to develop a full and fair record to explain his or her reasoning.  *Crysler v. Astrue*, 563 F. Supp.2d 418, 429 (N.D.N.Y 2008).

If the reviewing court is satisfied that the ALJ applied correct legal standards, then the court must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision."  *Brault v. Social Security Administration Commissioner*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)).  Thus, the court does not determine de novo whether a claimant is disabled.  *Id*.  The Supreme Court has defined substantial evidence as requiring "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  Pursuant to the substantial evidence standard, a reviewing court may reject an ALJ's findings of fact "only if a reasonable factfinder would have to conclude otherwise."  *Brault*, 683 F.3d at 448 (emphasis omitted) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth "a discussion of the evidence" and

the "reasons upon which [the decision] is based." 42 U.S.C. § 405(b)(1).  While the ALJ's decision need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.   *See Ericksson v. Commissioner Of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence); *Ruiz v. Barnhart*, No. 01-CV-1120, 2002 WL 826812, at *6 (S.D.N.Y. May 1, 2002) (ignoring evidence).

If the decision denying benefits applied the correct legal standards and is based on substantial evidence, the reviewing court must affirm; if not, the court may modify or reverse the decision, with or without remand. 42 U.S.C. § 405(g).

## B.      Legal Principles Applicable To Social Security Determinations

### 1.      Overview Of The Five-Step Inquiry

Under the Social Security Act, every individual considered to have a "disability" is entitled to disability insurance benefits.  42 U.S.C. § 423(a)(1).  The Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

14

To determine whether an individual is entitled to receive disability benefits, the Commissioner conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  First, the Commissioner must determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  Second, if the claimant is not gainfully engaged in any activity, the Commissioner must determine whether the claimant has a "severe impairment" that significantly limits the claimant's ability to do basic work activities.  Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe."  20 C.F.R. § 404.1520(a)(4)(ii).  Third, if the claimant has a severe impairment, the Commissioner must determine whether the impairment is (or medically equals) one of those included in the "Listings" of the regulations contained at 20 C.F.R. Part 404, Subpart P, Appendix 1.  If it is, the Commissioner will presume the claimant to be disabled, and the claimant will be eligible for benefits.  20 C.F.R. § 404.1520(a)(4)(iii).

After step three, but before step four, the Commissioner must assess the claimant's residual functional capacity – that is, the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her impairments.  At step four, the ALJ determines whether the claimant possesses the residual functional capacity to perform the claimant's past work.  20 C.F.R. § 404.1520(a)(4)(iv).  Fifth and finally, if the claimant is not capable of performing prior work, the Commissioner must determine whether the claimant is capable of performing other work.  20 C.F.R. § 404.1520(a)(4)(v). The claimant bears the burden of proof at the first four steps.  *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013).  Once the claimant has established that they are unable to perform their past work, however, the Commissioner bears the burden of showing that

"there is other gainful work in the national economy which the claimant could perform."
*Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quoting *Carroll v. Secretary of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

### 2.   Evaluation Of Medical Opinion Evidence

ALJs must consider medical opinion evidence of record.  Until recently, regulations required application of the so-called "treating physician rule" pursuant to which the opinion of a claimant's treating physician presumptively was entitled to "controlling weight." 20 C.F.R. § 404.1527(c)(2).  For claims filed prior to March 27, 2017, in order to assign less than controlling weight to the opinion of the treating physician, "the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (per curiam) (brackets omitted); *see also* 20 C.F.R. § 404.1527(c)(1)-(6).  After considering those factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2).  With respect to assigning weight to the opinions of non-treating physicians, an ALJ applying the earlier regulations must consider the same factors considered when the ALJ does not give controlling weight to a treating physician.  20 C.F.R. § 404.1527(c).

For claims filed on or after March 27, 2017, the new regulations promulgated in 20 C.F.R. § 404.1520c apply.  Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight.  Instead, all medical opinions must

be assessed under the same standard of supportability and consistency with no presumption that one opinion carries more weight than another.   20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) … including those from your medical sources").

The new regulations give most importance to two of the same factors previously considered to determine whether a treating doctor's opinion should be given controlling weight; i.e., the extent to which a treating physician's opinion is supported by well-accepted medical evidence and not inconsistent with the rest of the record.  20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions … are supportability … and consistency").  In most instances, the ALJ may, but is not required to, discuss the other factors previously required to assess medical opinion evidence (i.e., relationship with the claimant, specialization, and other relevant factors).  20 C.F.R. § 404.1520c(b)(2).  The ALJ must consider those additional factors, however, if there are "two or more medical opinions or prior administrative medical findings about the same issue that are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same …."[4]  20 C.F.R. § 404.1520c(b)(3).

---

[4] More specifically, if medical opinions on the same issue are equally well-supported and consistent with the record but are not identical, the ALJ must "articulate how [he] considered the other most persuasive factors."  20 C.F.R. § 404.1520c(c)(3).  Of the remaining factors, the third is the relationship with the claimant, for which the ALJ must consider the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship.  The fourth factor – specialization – requires the ALJ to account for whether the medical opinion is provided by a specialist that has expertise in

An ALJ must not only consider supportability and consistency in evaluating medical source opinions but also must explain the analysis of those factors in the decision.  20 C.F.R. § 404.1520c(b); *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("in cases where the new regulations apply, an ALJ ***must*** explain his/her approach with respect to the first two factors when considering a medical opinion") (emphasis in original).  As noted in the Administration's revisions to the regulations, "the articulation requirements in [the] final rules" are intended to "allow a … reviewing court to trace the path of an adjudicator's reasoning …."  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017); *see also Amber v. Saul*, No. 20-CV-490, 2021 WL 2076219, at * (N.D.N.Y. Feb. 24, 2021) ("Although the new regulations eliminate the perceived hierarchy of medical sources … the ALJ must still 'articulate how [he or she] considered the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions") (alterations in original) (citing 20 C.F.R. § 404.1520c(a) and (b)(1)).

Under the previous regulations, an ALJ's failure to consider the factors prescribed by the treating physician rule was grounds for remand.  Similarly, under the current regulations, an ALJ's failure to properly consider and apply the requisite factors is grounds for remand.[5]  *See, e.g., Rivera v. Commissioner Of Social Security*, No. 19-CV-4630,

---

the area related to the medical issue.  Lastly, the fifth factor is a catchall, which accounts for "other factors that tend to support or contradict a medical opinion or prior administrative finding."  That includes, but is not limited to, evidence showing a medical source has familiarity with other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5).

[5] Although not relevant here, another modification under the revised regulations is that the ALJ now must analyze opinions at the source-level, rather than separately analyze

2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *R. & R. adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and consistency of the consulting examiner's opinions"); *Andrew G. v. Commissioner Of Social Security*, No. 19-CV-942, 2020 WL 5848776, at *6-9 (N.D.N.Y. Oct. 1, 2020) (remanding due to ALJ's failure to adequately explain the supportability or consistency factors that led her to her decision).

## Discussion

Prieto argues that the ALJ's decision should be reversed or remanded on several grounds.  First, Prieto asserts that the ALJ failed to properly evaluate whether Prieto's impairments meet or equal Listings 1.04A and 1.04C.  (Pl. Mem. at 15-17.[6])  In response, the Commissioner argues that there is substantial evidence in the record to support the finding that Prieto did not meet any subsection of Listing 1.04.  (Def. Mem. at 16-19.[7]) Prieto further argues that the ALJ erred by failing to account for the side effects of Prieto's medication in determining Prieto's residual functional capacity.  (Pl. Mem. at 17.)  The Commissioner responds that the "record contains no treatment records corroborating [Prieto's] allegedly disabling medication side effects," and that Prieto's statements

---

multiple opinions of the same source presented in the record.   20 C.F.R. § 404.1520c(b)(1).   That means that the ALJ "will articulate how [he] considered the medical opinions … from [a] medical source together in a single analysis."  *Id*.

[6] "Pl. Mem." refers to Prieto's "Memorandum Of Law In Support Of Plaintiff's Motion For Summary Judgment On The Pleadings" (Dkt. 22).

[7] "Def. Mem." refers to the Commissioner's "Memorandum Of Law In Opposition To Plaintiff's Motion For Judgment On The Pleadings And In Support Of The Commissioner's Cross-Motion For Judgment On The Pleadings" (Dkt. 24).

concerning the intensity, persistence, and limited effects of his symptoms "were not entirely consistent with the medical evidence and other evidence of record." (Def. Mem. at 22-23.)

Next, Prieto argues that the ALJ failed to afford any weight to the opinions of Prieto's treating physicians, Dr. Orgel and Dr. Kim, and improperly gave significant weight to the opinion of a one-time consultative examiner, Dr. Long. (Pl. Mem. at 17-19.) The Commissioner responds that Dr. Orgel, Prieto's primary care physician, did not supply a medical opinion, so there was no medical opinion to be weighed. (Def. Mem. at 19-21.) Additionally, the Commissioner notes that the "only opinions provided by [treating physician] Dr. Kim were that [Prieto] was disabled[;] those opinions were thus on matters reserved for the Commissioner and not entitled to any special significance." (Def. Mem. at 20.) Accordingly, the Commissioner argues that the ALJ's failure to reference Dr. Kim's opinions was, at most, harmless error. (Def. Mem. at 20.)

Prieto further argues that the ALJ failed to consider that his persistent efforts to obtain relief of pain and other symptoms bolstered his credibility. (Pl. Mem. at 19-21.) The Commissioner counters that the ALJ's decision plainly shows that the ALJ considered Prieto's complaints of back pain and the lengths he went to obtain treatment. (Def. Mem. at 24.) Lastly, Prieto argues that the ALJ failed to fully assess Prieto's need for an assistive device on his ability to perform light work. (Pl. Mem. at 21.) The Commissioner disagrees, emphasizing that at the Hearing the vocational expert testified that the jobs available to someone like Prieto would not be reduced if the hypothetical worker had to use a cane. (Def. Mem. at 5, 25.)

For the reasons discussed below, the Court finds that the ALJ erred principally by failing to sufficiently attempt to obtain the opinions of Prieto's treating physicians.  As a result of that lapse, the ALJ failed to adequately develop the record and committed legal error.  The ALJ also erred in failing to provide an analysis of supportability and consistency to justify his weighting of the medical opinions that are in the record.  Remand is required to afford the ALJ an opportunity to remedy those errors.

## A.    The ALJ Failed To Adequately Develop The Record

Although Prieto did not raise an express challenge to the sufficiency of the record, the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record.  *Sanchez v. Saul*, No. 18-CV-12102, 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 13, 2020) ("As a threshold matter, and regardless of the fact that the Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *R. & R. adopted*, 2020 WL 1330215 (S.D.N.Y. March 23, 2020); *Castillo v. Commissioner Of Social Security*, No. 17-CV-9953, 2019 WL 642765, at *7 (S.D.N.Y. Feb. 15, 2019).  An ALJ has "regulatory obligations to develop a complete medical record before making a disability determination."  *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996); *see* 20 C.F.R. § 416.912(b)(1).  That obligation results from the non-adversarial nature of the instant proceedings, and exists "even when … the claimant is represented by counsel."  *Pratts*, 94 F.3d at 37.  "Courts in this Circuit have held on multiple occasions," albeit in the treating physician context, "that remand is required when ALJs fail to satisfy their duty to develop the record … by failing to request (and receive) a functional assessment from the treating physicians."  *Romero v. Commissioner Of Social Security*, No. 18-CV-10248, 2020 WL 3412936, at *13 (S.D.N.Y. June 22, 2020).

The ALJ must make every reasonable effort to obtain evidence from the medical entity that maintains a claimant's medical records.  20 C.F.R § 404.1512(b)(1)(i).  In order to have made a "reasonable effort," the ALJ must "make an initial request for evidence from [the claimant's] medical source or entity that maintains [the claimant's] medical source's evidence, **and**, at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, [the ALJ] will make **one follow-up request** to obtain the medical evidence necessary to make a determination."  20 C.F.R § 404.1512(b)(1)(i) (emphasis added).   The receipt of some medical records is not enough to discharge an ALJ's duty. Rather,

> the ALJ must obtain the treating physician's opinion regarding the claimant's alleged disability; "raw data" or even complete medical records are insufficient by themselves to fulfill the ALJ's duty. …  It is the *opinion* of the treating physician that is to be sought; it is his *opinion* as to the existence and severity of a disability that is to be given deference.

*Dimitriadis v. Barnhart*, No. 02-CV-9203, 2004 WL 540493, at *9 (S.D.N.Y March 17, 2004) (emphasis in original) (internal citation omitted); *see also Pabon v. Barnhart*, 273 F. Supp.2d 506, 514 (S.D.N.Y. 2003) ("[T]he duty to develop a full record ... compels the ALJ ... to obtain from the treating source expert opinions as to the nature and severity of the claimed disability ….") (alterations in original); *Alvarez v. Commissioner Of Social Security*, No. 14-CV-3542, 2015 WL 5657389, at *18 (E.D.N.Y. Sept. 23, 2015) ("In order to satisfy his threshold duty to develop the record, the ALJ had an obligation to obtain an opinion from Plaintiff's medical sources, including … the doctors Plaintiff[ ] referenced in [his] testimony." When documents received by an ALJ "lack any necessary information, the ALJ should recontact the treating physician."  *Oliveras Ex Rel. Gonzalez v. Astrue*, No. 07-CV-2841, 2008 WL 2262618, at *6 (S.D.N.Y. May 30, 2008), *R. & R. adopted*,

2008 WL 2540816 (S.D.N.Y. June 25, 2008).  A medical opinion is part of the "necessary information" that an ALJ should attempt to obtain from a treating physician.  *See Dimitriadis*, 2004 WL 540493 at *9; *Vera v. Barnhart*, 2007 WL 756577, at *10 (S.D.N.Y. March 13, 2007) (remanding because "ALJ had a clear duty to seek an opinion from [claimant's treating physician] regarding the existence, the nature, and the severity of plaintiff's claimed disability" but did not).

Here, the ALJ did not make the requisite follow-up attempt to obtain medical opinions from either of the treating physicians – Drs. Orgel and Kim.  On June 8, 2017, the ALJ requested medical records from Dr. Kim and from Montefiore Medical Center, where Dr. Orgel is employed.  (R. 108-10.)  Medical records were received from both Dr. Kim and Montefiore Medical Center; those records did not include, however, a medical opinion from either treating physician.  (R. 108-10.)  The ALJ had a duty to send a follow-up request to both Drs. Orgel and Kim.  *See* 20 C.F.R § 404.1512(b)(1)(i).  The record does not reveal any such follow-up attempt to obtain their medical opinions.  Having failed to do so, the ALJ did not fulfill his duty to develop the record, and his decision must be remanded for that reason alone.  *See Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999) (remanding due to ALJ's failure to obtain "adequate information from [claimant's] treating physician"); *Wilson v. Colvin*, 107 F.Supp.3d 387, 402 (2d Cir. 1982) (remanding where there was an obvious gap in the record); *Oliveras*, 2008 WL 2262618 at *6-7 (remanding so the ALJ could make all reasonable efforts to obtain treating physician's opinion).

The Commissioner does not address the ALJ's failure to develop the record.  He does, however, attempt to explain why the ALJ did not discuss the records of Drs. Orgel or Kim anywhere in his decision.  The Commissioner makes separate arguments with

respect to each doctor, but none of them make up for the ALJ's failure to sufficiently develop the record.

With respect to Dr. Orgel, the Commissioner argues that he did not provide a medical opinion, so there was no medical opinion to be weighed.  (Def. Mem. at 20.) While that is true, the omission only highlights the ALJ's failure to develop the record. The Commissioner also argues that the ALJ was not required to discuss Dr. Orgel's treatment of Prieto because the ALJ was not obligated to discuss every piece of evidence in the record.  (Def. Mem. at 19-21.)  That too highlights the ALJ's failure to develop the record. In his decision, the ALJ relied on seeming inconsistencies between the independent medical examiners' reports and Prieto's testimony. (R. 43.)  Where there are such conflicts or inconsistencies in the record, the ALJ "'bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.'"  *Hynes v. Astrue*, No. 12-CV-719, 2013 WL 3244825, at *11 (E.D.N.Y. June 26, 2013) (quoting *Hartnett v. Apfel*, 21 F.Supp.2d 217, 221 (E.D.N.Y. 1998)); *see also Louis v. Berryhill*, No. 17-CV-4597, 2018 WL 8545833, at *12 (S.D.N.Y. Oct. 11, 2018), *R. & R. adopted,* 2019 WL 1856490 (S.D.N.Y. April 25, 2019).  Given the inconsistencies highlighted in the ALJ's opinion, the ALJ's failure to seek out additional information from Dr. Orgel was all the more significant.

With respect to Dr. Kim, the Commissioner implicitly argues that Dr. Kim's statements in his treatment notes were, in fact, medical opinions.  The Commissioner makes that assertion in the context of arguing that the ALJ was permitted to dismiss Dr. Kim's opinion on the ultimate issue that Prieto was disabled.  (Def. Mem. at 20.)  The Commissioner is correct that Prieto's disability determination is a matter reserved for the

ALJ but incorrect that Dr. Kim's statements were medical opinions in the sense required in the DIB context.  For purposes of determining an applicant's eligibility for disability insurance benefits, a medical opinion is:

> [A] statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:
>
> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions…;
>
> (ii) Your ability to perform mental demands of work activities…;
>
> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R § 404.1513(a)(2).  The record does not include a medical opinion from Dr. Kim discussing Prieto's ability to perform the physical demands of work activities and his ability to adapt to environmental conditions.  (R. 318, 481, 544, 550.)  The statements that Dr. Kim made as a part of Prieto's treatment notes thus do not equate to a medical opinion for the purposes of determining his eligibility for DIB.  In short, the Commissioner cannot cover the ALJ's failure to obtain a medical opinion from Dr. Kim by characterizing as medical opinions statements that are not.

As aptly observed by another court, "[i]t is fundamentally unfair for the ALJ not to develop the record by obtaining treating sources' opinions while at the same time basing his disability determination, *inter alia*, on the ground that 'the record does not contain any non-conclusory opinions … from treating or examining physicians indicating that the

claimant is currently disabled.'" *Blair v. Colvin*, No. 16-CV-5983, 2017 WL 4339481, at *5 (S.D.N.Y. May 15, 2017), *R. & R. adopted*, 2017 WL 4342123 (S.D.N.Y. Sept. 27, 2017).   The ALJ's affirmative duty to develop the record was thus especially important with respect to sending a follow-up request for a medical opinion from Dr. Kim.

The ALJ should have attempted to obtain medical source opinions from Drs. Kim and Orgel as to the limiting effects of Prieto's spinal impairment, particularly in light of their extensive histories treating Prieto.   The ALJ's failure to do so was legal error. Accordingly, this case will be remanded for further development of the record.

**B.**   **The ALJ Did Not Properly Evaluate The Medical Opinions Of Record**

The ALJ also erred by failing to explain his application of the supportability and consistency factors to the medical opinions that he did consider.   As noted, the ALJ "***must***," on a source-level, "explain his [ ] approach with respect to the [supportability and consistency factors] when considering a medical opinion."   *Vellone*, 2021 WL 319354, at *6 (emphasis in original); *see also* 20 C.F.R. § 404.1520c(b)(2) ("We will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination or decision").

To analyze supportability, the ALJ must assess the objective medical evidence and supporting explanations presented with the medical opinions.   The more relevant the evidence and explanations are, the more persuasive the medical opinion is.   20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be.").   The ALJ must also analyze the consistency of the medical opinions. To do so, the ALJ must assess how consistent the medical opinion is with the other medical and nonmedical sources in the claim.   The more

consistent the medical opinion being analyzed is with the other sources, the more persuasive the medical opinion is.  20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be.").

Here, the ALJ failed to satisfy his obligations under the applicable regulations.  The ALJ afforded the most weight to the opinion of Dr. Long, the consulting doctor who examined Prieto one time.  But rather than analyzing the supportability and consistency factors as applied to Dr. Long's opinion, the only reasoning the ALJ provided was entirely conclusory; the ALJ said only that Dr. Long's opinion was "supported by the medical evidence of record and by her underlying examination."  (R. 45.)  Such a conclusory statement is an insufficient explanation of the supportability factor and is grounds for remand.  *See Vellone* 2021 WL 319354 at *4 ("Eschewing rote analysis and conclusory explanations, the ALJ must discuss the 'crucial factors in any determination … with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence.") (internal citation omitted); *Warren I. v. Commissioner Of Social Security*, No. 20-CV-860506, 2021 WL 860506, at *4 (N.D.N.Y. March 8, 2021) (remanded because the ALJ "failed to discuss what, if any, objective medical evidence and/or supporting explanations," supported the conclusions of the primary medical opinion on which he relied) (internal quotations omitted); *Brianne S. v. Commissioner Of Social Security*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. March 8, 2021) (ALJ committed legal error by failing to adequately apply the supportability factor because the ALJ "did not examine what [the doctors] used to support their opinions and reach their ultimate conclusions.")

The ALJ further erred in his consideration of the three doctors who offered opinions in the workers' compensation context – Drs, Hillsman, Wilson, and Ferriter.  The standard for disability for workers' compensation purposes is different than the standard for DIB and Supplemental Security Income.  *Lopez v. Berryhill*,, 448 F.Supp.3d 328, 345 (S.D.N.Y. 2020); *see* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled … is based on its rules, it is not binding on us").  Accordingly, "the opinion provided in a workers' compensation claim … is not controlling with respect to a claim of disability claim under the Act."  *Urbanak v. Berryhill*, No. 17-CV-5515, 2018 WL 3750513, at *24 (S.D.N.Y. July 18, 2018), *R. & R. adopted*, 2018 WL 3745667 (S.D.N.Y. Aug. 7, 2018); *see also Mangum v. Colvin*, 13-CV-4213, 2015 WL 629403, at *11 n.13 (S.D.N.Y. Feb. 13, 2015) ("the characterization of Plaintiff as 'disabled' by medical providers for purposes of his Workers' Compensation claim is not particularly useful in the Social Security context because the two statutory schemes have completely different definitions of disability.") ALJs thus often afford workers' compensation medical opinions little weight.  *See, e.g.*, *Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018) (finding that ALJ did not err in giving little weight to doctor's opinion provided in claimant's workers' compensation case, and noting that definition of disability in a workers' compensation context is not the same as under the Act).

Nonetheless, in evaluating the medical opinions of doctors provided for workers' compensation purposes, the ALJ must consider the factors delineated in 20 C.F.R. § 404.1520c(c)(1-6).  *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions … in your

case record"); 20 C.F.R. § 404.1504 (although decision of another governmental agency or nongovernmental entity about whether you are disabled is not binding, "we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim").

The ALJ in the instant case based his decision in part on the workers' compensation disability opinions provided by three different physicians: Drs. Hillsman, Wilson and Ferriter.  But the ALJ made no mention of the supportability and consistency factors when affording Dr. Hillsman's opinion "less than great weight" and the opinions of Drs. Wilson and Ferriter "little weight."  Instead, the ALJ made a blanket statement that he "considered the medical opinion(s) and prior administrative findings in accordance with the requirements of 20 C.F.R. § 404.1520c" (R. 42), without explaining what the relevant factors were and how he applied them, even though that is what the regulation requires. 20 C.F.R. § 404.1520c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinion").  The absence of such analysis is particularly noteworthy because the ALJ afforded Dr. Hillsman's opinions more weight than those of Drs. Ferriter and Wilson, even though Dr. Hillsman's opinion was the least recent and the least supported of the three opinions.  *See Rodriguez v. Berryhill*, No. 16-CV-9951, 2018 WL 1508739, at *4 (S.D.N.Y. March 7, 2018) (ALJ erred by failing to explain basis for favoring earlier opinion over a more recent medical opinion); 20 C.F.R. § 404.1520c(a) ("The most important factors we consider when we evaluate the persuasiveness of medical opinions … are supportability … and consistency").

The ALJ's selective and unexplained weighting of the medical opinions also violates the principle against cherry-picking.  An ALJ may not "'cherry-pick' medical

opinions that support his or her conclusions while ignoring opinions that do not." *Salisbury v. Saul*, No. 19-CV-706, 2020 WL 913420, at *34 (S.D.N.Y. Feb. 26, 2020) (citing *Tim v. Colvin*, No. 12-CV-1761, 2014 WL 838080, at *7 (N.D.N.Y. March 4, 2014)); *see also Castillo,* 2019 WL 642765 at *8.   Such cherry-picking, without proper analysis of the supportability and consistency factors, is ground for remand.  *See Jones v. Saul*, No. 19-CV-5542, 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *R. & R. adopted,* 2020 WL 5775195 (Sept. 28, 2020) (remanding in part because an "ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not"); *Marrero Santana v. Commissioner Of Social Security*, 2019 WL 2330265, at *12 (S.D.N.Y. Jan, 17, 2019), *R. & R. adopted*, 2019 WL 2326214 (May 30, 2019) (remanding because the ALJ "cherry-pick[ed] evidence in order to assign [a medical opinion] little weight"); *Andrew G.*, 2020 WL 5848776 at *6-9 (remanding because ALJ cannot "pick and choose evidence in the record to support his conclusions," as doing so results in "inadequate review [that] fail[s] to set forth the crucial factors justifying the ALJ's findings with sufficient specificity to allow the Court to determine whether substantial evidence support[s] the assigned persuasiveness of the [medical] opinions …") (internal citation omitted).

Accordingly, the ALJ erred not only in failing to adequately develop the record by attempting to obtain the opinions of Prieto's treating physicians, but also in failing to explain the supportability and consistency of the opinion evidence that he did consider.

## C.    The ALJ Did Not Sufficiently Explain His Conclusion Regarding The Listings

It is the ALJ's responsibility to "build an accurate and logical bridge from the evidence to [his] conclusion to enable meaningful review."  *Horton v. Saul*, No.19-CV-

8944, 2021 WL 1199874, at *12 (S.D.N.Y. March 30, 2021) (citing *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp.2d 133, 142 (N.D.N.Y. 2012)).   Accordingly, where there is record evidence that appears to support a conclusion that most or all of the elements of a Listing are met, an ALJ must explain why a claimant's condition does not satisfy the Listing.   *See Woods v. Saul*, 19-CV-336, 2021 WL 848722, at *15 (S.D.N.Y. March 5, 2021) ("[T]he ALJ must provide an explanation of his reasoning as to why he believes the requirements [of a Listing] are not met and explain the credibility determinations and inferences he drew in reaching that conclusion") (internal citation omitted); *Debbie I. v. Commissioner Of Social Security,* No. 19-CV-1089, 2020 WL 6866378, at *3 (W.D.N.Y. Nov. 23, 2020) (remanding where "[d]espite th[e] evidence suggesting that, at the very least, Plaintiff met some of the requirements of Listing 1.04, the ALJ here never discussed it"); *Kuleszo v. Barnhart*, 232 F. Supp.2d 44, 52 (W.D.N.Y. 2002) ("Where the claimant's symptoms, as described by the medical evidence, appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings").

Here, there is considerable evidence in the record that Prieto met many of the requirements of Listing 1.04(A).[8]   Prieto was diagnosed with spinal stenosis and a degenerative disc disease resulting in compromise of a nerve root.   (R. 58, 61, 73-74, 303, 305, 316-17, 327, 332.)   Prieto had nerve root compression, as evidenced by his

---

[8] The requirements for Listing 1.04(A) are as follows:   "[S]pinal stenosis … [or] degenerative disc disease … resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."   20 C.F.R. Part 404, Subpart P, Appendix 1.

need for surgery to decompress his nerve root.  (R. 302, 305, 315.)  Prieto also demonstrated neuro-anatomic distribution of pain, as he experienced severe leg pain in addition to his back pain (R. 316, 318, 331, 340, 376), and he had limited motion of the spine (R. 318, 373, 400, 432, 493).  There is also evidence in the record suggesting that Prieto had motor loss with associated muscle weakness, accompanied by sensory or reflex loss.  (R. 65, 316, 317, 318, 336, 616.)  And, Prieto consistently demonstrated positive straight leg tests while sitting and supine.  (R. 315, 318, 319, 332, 338, 341, 429, 433, 482.)

At the same time, however, there also is evidence suggesting that Prieto may not meet some of the elements of Listing 1.04(A).  In several examinations, Prieto exhibited no atrophy with associated muscle weakness.  (R. 113, 302, 354, 391, 416, 457.)  Additionally, Prieto was at times able to demonstrate negative straight leg tests while sitting and supine.  (R. 56, 113, 354, 390.)

Rather than discuss the assorted evidence, however, the ALJ merely wrote a conclusory statement that Prieto did not meet Listings 1.04(A) or (C), quoting portions of the Listings without any explanation.  (R. 42.)  The Court thus is left with no basis on which to evaluate whether substantial evidence supported the ALJ's determination; the ALJ failed to build any "logical bridge" to "enable meaningful review."  *Horton*, 2021 WL 1199874.  In order to aid the reviewing court, on remand "the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings." *Kuleszo*, 232 F. Supp.2d at 52; *see also Norman v. Astrue*, 912 F.Supp.2d 33, 77-81 (S.D.N.Y. 2012) (the ALJ erred by "not provid[ing] any reasoning whatsoever for his conclusion at step three

of the analysis"); *Horton*, 2021 WL 1199874 at *13 (on remand, the ALJ should provide a "real analysis to bridge the relevant evidence to her determinations").

## D.    Prieto's Additional Arguments

In light of remand for the ALJ's failure to develop the record, the Court need not separately address Prieto's additional arguments, namely that the ALJ failed to: (1) account for side effects of medication in determining Prieto's residual functional capacity; (2) consider that Prieto's persistent efforts to obtain relief of pain and other symptoms enhances his credibility; and (3) consider the impact of Prieto's need for an assistive device on his ability to perform light work.  Each of those issues should be re-evaluated on remand in the context of a fully developed record.

## Conclusion

For the reasons stated above, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's motion is DENIED, the Plaintiff's motion is GRANTED, and the case is REMANDED for further proceedings consistent with this opinion.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  August 6, 2021
        New York, New York